HELEN ARMSTRONG and DOROTHY ARMSTRONG, a minor, by EMMA ARMSTRONG, her Next Friend, Respondents, v. THE DENVER & RIO GRANDE RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 18, 1916.

1. **NEGLIGENCE: Railroads: Humanitarian Doctrine: Telegraph Line Repairers.** The plaintiffs, who are the minor children of one Armstrong, sued to recover damages from the defendant for their father's death, which occurred on the defendant's right of way. Armstrong was the foreman of a telegraph line repair gang, which with the permission of the defendant, was using the defendant's track to repair the damages done by severe storms to the telegraph line. Armstrong and his men were using hand cars for transportation, and while in the act of removing a hand car from the track a passenger train running at a high rate of speed struck the car, which injured him and he died from the injuries. *Held*, that a peremptory instruction requested by the defendant was properly refused.

2. **INSTRUCTIONS: Failure to Prove Negligence.** Where an instruction submitted to the jury, a charge of negligence in failing to give signals for curves and cuts, and there is a total failure to adduce evidence in support of that charge, it is reversible error.

Appeal from Jackson Circuit Court.—*Hon. James P. Aylward*, Special Judge.

REVERSED AND REMANDED.

*Prince & Harris* and *J. S. Rust* for respondents.

*White, Hackney & Lyons* for appellant.

JOHNSON, J.—Robert J. Armstrong, employed by the Western Union Telegraph Company as foreman of a company of workmen engaged in repairing one of its telegraph lines along defendant's right of way, was killed in April, 1910, near Castle Rock, Colorado, by a passenger train, and this action was commenced in July, 1911, by his daughters, as plaintiffs (his widow having failed to sue), to recover damages for his death on the ground that it was caused by negligence of defendant in the operation of the train. Verdict and judgment were for plaintiff in the circuit court and the cause is here on the appeal of defendant.

The repairers, ten in number, under the leadership of Armstrong, had been repairing injuries to the line caused by a severe and extensive storm, and in the prosecution of the work traveled on handcars with the knowledge and consent of defendant. They boarded at Castle Rock while working in that vicinity and on the morning of the injury in question started at the usual time to travel on two handcars to their place of work which was some distance north of Castle Rock. Half of the workmen, including the assistant foreman, one Hinerman, departed first on one handcar and the other half with Armstrong, the foreman, operated the second car which followed the first at a distance of about a quarter of a mile. If defendant's northbound passenger train had been on time that morning it would have passed Castle Rock a few minutes before the handcars were due to leave, but it was nineteen minutes late—a fact known to Armstrong, and did not arrive at that station, where it stopped to receive and discharge passengers, until a few minutes after the handcars had started. After leaving the station, the train attained a rate of speed about which the witnesses differ, but which, for present purposes, may be estimated at thirty miles per hour, and it was running at that rate when the

engine, emerging from a cut where the track, following a sinuous course of reverse curves, straightened into a tangent, afforded the engineer a view of the rear hand-car which then was being removed from the track at a point in the middle of a fill which succeeded the cut.

The engineer, introduced as a witness by defendant, testified in substance, that he saw the handcar and the men trying to remove it as soon as they came into view; that the car was two hundred feet in front of the engine; that he immediately sounded the whistle, applied the air-brakes and succeeded in coming to a full stop in a distance of five hundred feet, but not until after the locomotive struck and hurled the car from the track, but in his effort to stop, he did not reverse the power. Warned by a signal from the men on the first handcar that the train was coming, Armstrong had stopped his car and he and the men had succeeded in removing all but one corner from the track and Armstrong, alone, was trying to complete the removal—the other men having fled to places of safety—when the train struck the car which, in turn, struck Armstrong and inflicted injuries from which he died.

The engineer said: "Armstrong was in the act of going around the handcar. You see the whole car was not on the track at the time I saw it, it was all off with the exception of the right front wheel on the west side of the track. The whole car was off with the exception of the west front wheel which was in between the rails, understand. The right front wheel was in right close to the rail and he must evidently have been trying to run around the front of the car to lift the wheel off, so he could throw it off the track and keep from striking the car. I saw him do it, saw him going around, walking or running . . . just as fast as he could go. Of course, I just saw it for a second. The boiler obstructed the view after."

The petition alleges negligence of the engineer in not sounding the whistle, as was customary and usual on entering or passing around curves or through cuts, and also negligence under the humanitarian doctrine in not

making a reasonable effort to stop, or slacken speed of the train, after the engineer saw, or should have seen, and realized that Armstrong was in a position of danger. Certain sections of the Colorado statutes are pleaded, but in the view we have of the case, they are not material to the determinative issues now before us and, therefore, need not be stated.

At the close of plaintiff's evidence and at the conclusion of all the evidence, defendant requested that a peremptory instruction be given the jury to return a verdict in its favor but these requests were refused. These rulings are challenged by defendant and the questions they involve first shall receive our attention.

Taking up the issue of negligence predicated of the alleged failure of the engineer to give warning signals on entering the curves and cuts, it may be conceded for argument that it was his duty to give such signals and that a failure to give them would constitute negligence for which defendant, his employer, would be liable for the injurious consequences. The burden of proving such negligence devolved upon plaintiffs and we find ourselves constrained to hold they have failed in their proof. Defendant introduced witnesses who were in a position to know with certainty about the signals and they testified that such signals were given by the sounding of one long and one short blast of the whistle. The only witnesses introduced by plaintiff to prove that no signals were given were men who were on the handcar which was running at twelve or fifteen miles per hour at the time the whistles should have been blown.

Their statement that they did not hear the whistle should not be allowed to weigh against the positive testimony to the contrary since the noises of the handcar and the intervening distance and topographical obstacles to the transmission of sound might, and in all reasonable probability did, prevent them from hearing signals which were actually given. There is no necessary conflict between their testimony and that of the more favorably circumstanced witnesses who say the signals were given, and such testimony must be regarded as purely negative

in character, as lacking in affirmative strength and, therefore, wholly insufficient of itself to raise a debatable issue of fact in the face of a mass of positive evidence that the signal was given. [McNeil v. Railway, 182 S. W. 762; Williamson v. Ry., 139 Mo. App. 481, 489; Quinley v. Traction Co., 180 Mo. App. 297; Sanders v. Railroad, 147 Mo. l. c. 424; Bennett v. Railroad, 122 Mo. App. l. c. 709; Shaw v. Railroad, 104 Mo. l. c. 657; Rashall v. Railroad, 249 Mo. 509, 522.]

Since plaintiffs have failed to adduce substantial evidence to support their first charge of negligence to which contributory negligence of Armstrong (alleged in the answer) would be a defense, it is unnecessary to discuss the subject of contributory negligence, and we pass to the questions relating to the issue of negligence of defendant under the humanitarian rule, to which contributory negligence would be no defense under the laws either of Missouri or of Colorado where the cause of action arose.

Counsel for defendant attack the sufficiency of the petition to state a cause of action based on ''last chance'' negligence on the ground that the petition fails to allege that Armstrong was at a place where the engineer should have anticipated the presence of persons on the track. By answering to the merits defendant waived mere formal irregularities and insufficiencies in the petition, but we find that pleading free from even such objections. It alleges that Armstrong was in a situation of peril of which he was oblivious; that the engineer saw him in such position, or by the exercise of ordinary care could have seen him in such position, in time, by the exercise of ordinary care to have avoided the injury by stopping or reducing the speed of the train, but carelessly and negligently failed to exercise such care. The cause thus averred was not restricted to negligence of the engineer to keep a proper lookout at a place where he had reason to anticipate the track would not be clear but included negligence in failing to observe the peril of Armstrong and the latter's lack of knowledge of such peril, as well as negligence in failing to put forth a reasonable effort

to avert the injury after receiving knowledge of the perilous situation.

The petition stated the precise cause of action; we find the evidence of plaintiffs tends to establish and this cause does not rest upon any failure of the engineer to keep a lookout. Such negligence may be an ingredient but is not an indispensable element of a cause of action predicated of a breach of a humanitarian duty. An utterance to the contrary in Nivert v. Railroad, 232 Mo. l. c. 639, did not receive the approval of a majority of the court and, therefor, is not authoritative.

The engineer says he was keeping a lookout, saw and realized the peril as soon as the handcar and Armstrong came into view, and gave the alarm signal, shut off the power and set the air-brakes, at once. If this is so, what does it matter whether or not this was a place where he was duty-bound to keep a lookout? If he was looking— and the jury were entitled to infer that he was—and if he saw and realized the full peril of Armstrong's situation, the humanitarian duty devolved upon him to exercise reasonable care to avert the injury; and we come to the question of whether or not the evidence in its aspect most favorable to plaintiffs tends to show a negligent breach of that duty. In the face of substantial evidence that when the handcar first became visible to the engineer it was four hundred and sixty-five feet away, and of expert testimony that the train, under conditions which obtained, could have been stopped in less than three hundred feet, the statements of the engineer that the handcar was only two hundred feet distant and the stop he made in five hundred feet was as short a space as the train could have been stopped in, could be accorded no greater evidentiary strength than that of raising issues of fact for the jury to determine.

A reasonable inference may be drawn from all the evidence that the engineer actually saw and realized the peril of Armstrong in ample time to save him, but failed to exercise reasonable care to prevent striking the handcar. An instant longer and Armstrong would have lifted and pulled the corner of the car out of the way,

and a slight reduction of speed would have enabled him to escape. There is substantial evidence that the train did not slacken speed until after the collision, and if the jury believed that evidence they could not avoid the conclusion that the engineer made no reasonable effort to lessen the danger and avoid the injury.

The requests for a peremptory instruction were properly refused.

But the judgment must be reversed and the cause remanded for errors in the instructions of plaintiffs which submitted issues under the first charge of negligence, i. e., negligence in failing to give signals for the curves and cuts when, as we have shown, there was a total failure to adduce evidence in support of that charge. There are other errors in the instructions which need not be specifically pointed out since they have been sufficiently indicated in what we have said.

A motion to affirm the judgment or dismiss the appeal recently filed by plaintiffs and addressed to certain alleged deficiencies in the abstract is found not to be well grounded and is overruled. The motion for a new trial is sufficiently specific to raise the issues we have determined.

The judgment is reversed and the cause remanded. All concur.