KATE HOELKER, Administratrix of Estate of JOSEPH HOELKER, v.
AMERICAN PRESS, Appellant.—296 S. W. 1008.

Court en Banc, May 23, 1927.

**1. NEGLIGENCE: Independent Contractor: Estoppel: By Instructions.** The
defendant corporation, by asking and receiving an instruction submitting
to the jury the issue whether the driver of the motor cycle which struck and
injured the pedestrian was an independent contractor, did not estop itself
from contending that its demurrer to plaintiff's case should have been sustained on the ground that the evidence shows as a matter of law that the
driver was an independent contractor and therefore defendant is not liable
even though the driver's negligence caused the injury. The defendant having
contended throughout the trial that the driver was not its servant, but an
independent contractor, and the trial court, in overruling defendant's demurrer to the evidence, having necessarily ruled that there was evidence
which required the submission of that vital question to the jury, the defendant was compelled to go to the jury on that issue, and in asking and
receiving an instruction submitting the issue to the jury did not waive its
demurrer, but is entitled to contend on appeal that there was no evidence
authorizing the submission of that issue to the jury, but that the evidence
as a matter of law shows that the driver was an independent contractor.

**2. INDEPENDENT CONTRACTOR: Matter of Law: Undisputed Facts.**
The question whether a person engaged in doing a certain work is an independent contractor in each case must necessarily depend upon its own
facts, and in applying the rule courts give heed to the varying circumstances bearing upon the question whether the person rendering the service
represents the will of his employer only as to the result of the work, and
not as to the means by which the result is produced. If the facts are undisputed the court may declare as a matter of law whether such person is an
independent contractor, or merely a servant. But where the facts are disputed the proper course is to submit the question to the jury under proper
instructions.

**3. ————: Tests.** The right of the employer to inspect the work to be
done, the right to discharge the person employed to do the work or to require the discharge of someone employed by him, the manner of payment,
the character of the unit of calculation of payment for the thing done, the
ownership of the appliance used in the performance of the work, or the fact
that the person doing the work usually follows an independent occupation,
are not, singly or collectively, a conclusive test that the relation of independent contractor obtained in the particular case; but all are to be considered only as aids in determining whether the person engaged to do the
particular work was the agent of the other, or was himself a principal.
The general determinative test is whether the person who did the work was
engaged to produce a certain result, and in doing the work was not subject
to the control of the other party as to the means or methods used in producing the result.

**4. ————: Delivery of Newspapers: Question for Jury.** An automobile
struck and injured a pedestrian as he was moving from the sidewalk to
board a street car, and suit was brought for damages against the defendant
corporation, which was the publisher of a newspaper. The driver of the
automobile, by oral arrangement, engaged to deliver newspapers to newsboys
at certain designated street corners, five times each day. The driver was
required to have a motor cycle, with an attachment or side car in which to
carry the papers, was to pay for repairs upon the motor cycle, was to
report at the newspaper office at fixed hours prepared to receive the papers

and deliver them to the newsboys at the designated corners, was given cards naming the newsboys and designating the number of papers to be delivered to each, and was to receive six dollars a day for the work. He was not instructed as to what particular streets to travel in order to reach the newsboys, nor how fast to travel, was not employed for any definite time, and was subject to discharge if his work was not satisfactory. He did no other delivery work with his motor cycle, and had not previously done delivery work. **Held,** that the inference could reasonably be drawn from these facts that the right to control the means used in the performance of the work was assumed and exercised by defendant, and the question whether the driver was an independent contractor, or an agent under the control of defendant, was one for the jury to determine.

5. **NEGLIGENCE: Motor Cycle: Warning: Precluded by Plaintiff's Testimony.** The testimony of the driver of the motor cycle, called by plaintiff as his witness, that he sounded the horn before striking plaintiff, is not conclusive upon plaintiff, but he is entitled to show, if he can, either by himself or other witnesses, that the horn was not sounded.

6. ———: ———: ———: **Negative Testimony.** The actual or relative value of the mere negative testimony of a witness, that he did not hear a sound or warning of the horn of the motor cycle which struck the pedestrian, depends upon the circumstances of the particular case. It depends upon whether the witness was a person of good hearing, the distance he was from the motor cycle, whether there were other noises, whether other things distracted his attention, and the like. And where plaintiff testifies that his hearing was good, that as he stepped from the sidewalk he looked in both directions and that he heard no sounding of the horn; and the driver of the motor cycle, although plaintiff's witness, testifies that he sounded the horn when he was twenty-five feet from the safety post nearest him, and that after sounding he ran thirty feet before striking plaintiff, it cannot be ruled as a matter of law that plaintiff's testimony that he heard no sound of the horn is of no probative force, but the question whether the horn was sounded is one for the jury.

7. ———: ———: **Speed: Contradictory Statements.** Contradictions in plaintiff's testimony as to whether he saw the motor cycle before it struck him, and the speed at which it was traveling, will not wholly destroy his testimony that it was traveling ten miles an hour, where he had been a street cleaner for eight or nine years and was accustomed to observe the speed of vehicles upon the street, and testifies that he was dragged and rubbed over the street, that the dragging tore the flesh from his body and both bones of his left leg were broken a little below the knee, and that he estimated the speed from "the way it hit me" and that "it didn't take no time until it hit me."

8. ———: ———: ———: **Statute: Degree of Care.** Under Section 19 of the Act of 1921 (Laws 1921, Ex. Sess., pp. 76, 107), which was determined to be constitutional in Lauck v. Reis, 310 Mo. 184, the driver of a motor vehicle, who attempts to drive it in the space between a street car halted to take on passengers and the sidewalk from which persons are coming to board the street car, is required to slow down and move cautiously, which means that he is to exercise the highest degree of care, and that the rate of speed shall be adapted to the situation and the circumstances existing at the particular place.

9. ———: ———: ———: **Instruction: Admission of Sufficient Evidence.** The defendant having asked and received an instruction telling the jury that "the fact that the motor cycle was being driven at a high rate of speed at or just previous to the time it struck plaintiff (if you so find) raises no presumption that the accident was caused by such excessive speed" and "therefore you are instructed that the plaintiff cannot recover because of such excessive speed unless you find and believe from the evidence that the injury would not have occurred if the motor cycle had not been running at such

    317 Mo. 5.

high rate of speed," and having asked no instruction withdrawing from the jury the issue of rapid and dangerous speed, which was one of the several acts of negligence alleged, cannot be heard to say on appeal that there was no evidence of high and excessive speed.

10. ————:    Contributory: Motor Cycle and Pedestrian.    The plaintiff having testified that he looked up and down the street as he left the side-walk to board the slowing-down street car, and the driver of the motor cycle which struck him having testified that plaintiff moved quickly from the sidewalk towards the street car, the question whether plaintiff was himself negligent is one for the jury; and an instruction requiring the driver of the motor cycle to exercise the highest degree of care is not erroneous.

11. EXCESSIVE VERDICT: $4500: Broken Leg.    Plaintiff was a street cleaner, sixty-five years of age, and receiving $2.75 per day, six days in the week. He was struck by a motor cycle as he was about to board a street car as a passenger. Both bones of the left leg were fractured, a little below the knee cap. He was taken to a hospital, a cast was placed about the leg, and he remained there for two weeks. He was then taken to his home, and thereafter was under the care of a physician, who testified, one year after the accident, that the muscles are paretic and cannot flex or extend in the ordinary manner; that there is a swelling about an inch downward from the knee; that the leg is swollen from the knee to the ankle; that the swelling is more pronounced after using the leg; that plaintiff could not walk without the use of crutches; that he would never recover the entire normal use of the leg, but there would be a slow improvement. Plaintiff had been able to do no work since the injury; he suffered pain at times, but not all the time.  Held, that a verdict for $4500 was not excessive.

Corpus Juris-Cyc. References: Damages, 17 C. J., Section 438, p. 1107, n. 64.  Independent, 31 C. J., p. 474, n. 31.  Motor Vehicles, 42 C. J., Section 1076, p. 1253, n. 29; Section 1093, p. 2159, n. 5; Section 1127, p. 1270, n. 34.

. Appeal from Circuit Court of City of St. Louis.—*Hon. William H. Killoren*, Judge.

·AFFIRMED.

: *Buder & Buder* and *G. A. Buder, Jr.*, for appellant.

., (1)   One who contracts to do certain work not in itself unlawful or necessarily dangerous to others, according to his own methods with his own equipment and appliances, and without being subject to the control of the employer except as to the results to be accomplished by said work, is an independent contractor, for whose wrongs and negligence the principal is not liable. The driver of the motor cycle in this case was an independent contractor, and the defendant was not answerable for his acts and deeds. Gall v. Detroit Journal Co., 191 Mich. 405; Fink v. Missouri Furnace Co., 82 Mo. 283; Thomassen v. Water & Light Co., 251 S. W. 451; Fisher v. Levy Circulation Co., 182 Ill. App. 395; Kipp v. Oyster, 133 Mo. App. 716; Crenshaw v. Ullman, 113 Mo. 639; McGrath v. St. Louis, 215 Mo. 191, 210; Sawtells v. Ekenberg Co., 206 Mich. 246. (2)   A written contract is not necessary to establish the relation of inde-

pendent contractor, but it may be shown by oral testimony; and where there is no disagreement or conflict in such oral testimony, the question is a matter of law for the court. Kipp v. Oyster, 133 Mo. App. 716; Thomassen v. Water & Light Co., 251 S. W. 451. (3) The mere fact that the party for whom the work is being done retains the right, by way of proper supervision, to obtain a compliance with the contract by the contractor, so that the desired ultimate results may be produced, does not affect the relationship between the parties, and the one doing the work is still an independent contractor, unless he is subject to the direction of the principal as to the manner, method and means of performing the work. McGrath v. St. Louis, 215 Mo. 211; Crenshaw v. Ullman, 113 Mo. 639; Gayle v. Car & Foundry Co., 177 Mo. 447; Lofty v. Const. Co., 215 Mo. App. 163. (4) Mere negative testimony of a witness, that he did not hear a sound or warning, amounts to nothing and is inadmissible as against positive testimony to the effect that the sound or warning in question occurred and was given. Testimony that a witness did not hear a horn or warning signal sounded has no probative force as against positive testimony that the horn or warning signal was sounded, and it is not substantial evidence upon which a verdict can be based. Armstrong v. Ry. Co., 195 Mo. App. 86; Quinley v. Traction Co., 165 S. W. 349; McNeil v. Mo. Pac. Ry. Co., 182 S. W. 763; Bennett v. Street Ry. Co., 122 Mo. App. 709; Sanders v. Electric Ry. Co., 147 Mo. 411, 424; McGrath v. Transit Co., 197 Mo. 97; Osborn v. Wabash Railroad Co., 166 S. W. 1124. (5) Where a witness makes conflicting and irreconcilable statements of fact, one tending to sustain and the other to disprove the allegations of the petition, there is no evidence to be submitted for the determination of a jury. Until a witness can determine for himself just what he saw or did not see, neither the court nor the jury are warranted in making the decision or determination for him, and the matter stands as if no proof had been offered. Oglesby v. Mo. Pac. Ry. Co., 177 Mo. 272; Brosius v. Lead & Zinc Co., 149 Mo. App. 186; Hook v. Mo. Pac. Ry. Co., 162 Mo. 569; Van Bibber v. Swift & Co., 286 Mo. 317, 337; State v. Johnson, 225 S. W. 963. (6) Where a party to a suit bases his case upon the testimony of an adverse witness, and such testimony fails to substantiate his claim, he is bound by the testimony of such witness and a demurrer to his case should be sustained. Wells v. Lusk, 188 Mo. App. 68; Frank v. Free, 190 Mo. App. 80. (7) If a pedestrian is aware, or gives indication of being aware, of the approach of a vehicle, the driver of such vehicle is under no obligation to warn him until it is evident that he is not going to get out of the way. Rubick v. Sandler, 219 S. W. 406; DeWolf v. Dry Goods Co., 240 S. W. 1094. (8) Section 19 of Motor Vehicles Act, Laws 1921, Ex. Sess. p. 91, upon which Instruction 1 is based, is invalid and unconstitutional, because it was passed in extra session without authority from the

Governor to legislate on the matter which it contains. Constitution of Missouri, Art. IV, sec. 55; Art. V, sec. 9; Wells v. Railway, 110 Mo. 286; State ex rel. v. Edwards, 241 S. W. 945; Stocke v. Edwards, 244 S. W. 802. (9) The word "employer" includes one who engages the services of an independent contractor. By deduction, the word "employee" comprises independent contractors as well as servants. Morgan v. Bowman, 22 Mo. 548; Gayle v. Car & Foundry Co., 177 Mo. 427; Gall v. Detroit Journal Co., 191 Mich. 409.

*Thomas R. Taylor* and *Marsalek, Stahlhuth & Godfrey* for respondent.

(1) In passing upon the demurrer to the evidence it is the duty of the court to accept as true all evidence in favor of plaintiff and all inferences in plaintiff's favor which may, with any degree of propriety, be drawn therefrom, and the court cannot draw inferences in favor of defendant to counterbalance or overthrow inferences in plaintiff's favor. Knapp v. Hanley, 108 Mo. App. 360; Troll v. Drayage Co., 254 Mo. 332; Buesching v. Gas Light Co., 73 Mo. 219. The court can sustain a demurrer only when the evidence and the inferences to be drawn therefrom, considered in the light of the foregoing rule, show conclusively that plaintiff has no case. Scherer v. Bryant, 273 Mo. 602; Gratiot v. Railroad, 116 Mo. 466; Steffens v. Fisher, 161 Mo. App. 393. (2) The court could not properly take the case from the jury on the theory that Nowak was an independent contractor. He was not engaged in the business of hauling as an independent occupation; he was not employed by defendant to do a specific job of work, but did the same work day after day for an undetermined period. He was controlled by defendant in both the manner and the means of performing his work, and their arrangement readily supports the inference that the right of control was with the defendant. He was required to do his work in a manner satisfactory to defendant upon penalty of being discharged from his position. Under the evidence, he was an ordinary employee. O'Hara v. Gas Co., 244 Mo. 409; Gayle v. Car & Foundry Co., 177 Mo. 427; Scherer v. Bryant, 273 Mo. 596; Speed v. Railroad, 71 Mo. 303; Samper v. American Press, 273 S. W. 186; Tomlinson v. Marshall, 208 Mo. App. 381; Porter v. Withers' Estate, 201 Mo. App. 27; Alexander v. Publishing Co., 197 Mo. App. 601; Mullich v. Brocker, 119 Mo. App. 332; O'Neill v. Blase, 94 Mo. App. 648; Sandifer v. Lynn, 52 Mo. App. 553; Burgess v. Garvin, 272 S. W. 108; Koelling v. Union F. & I. Co., 267 S. W. 34; Borah v. Motor Co., 257 S. W. 145; Simmons v. Murray, 234 S. W. 1009; Fitzgerald v. Caldwell, 226 S. W. 971; Master & Servant, 39 C. J. 1321-3. The burden of proving that Nowak was an independent contractor was upon the defendant. Knoche v. Pratt, 194 Mo. App. 304; Semper v. American Press, 273 S. W. 186; Schneider v. Maney,

242 Mo. 43. (3) There was ample evidence to warrant submission to the jury of the speed of the motor cycle at and just prior to the time it struck plaintiff. Plaintiff testified it was going about ten miles an hour; that he saw it when it came around the corner of the automobile, fifteen or twenty feet away, and Nowak testified that at the time of the accident he was going between seven and ten miles an hour. That plaintiff made contradictory statements, regarding his view of the motor cycle, on cross-examination, does not destroy his testimony on this issue, in view of the fact that he corrected the mistake. Rigley v. Pryor, 290 Mo. 10, 20; Benjamin v. Railroad, 245 Mo. 615; Huff v. Railroad, 213 Mo. 515; Rowe v. U. Rys. Co., 211 Mo. App. 541; Hamra v. Orten, 208 Mo. App. 43; Downs v. Racine Co., 175 Mo. App. 386; Harriman v. Dunham (Mo. App.), 196 S. W. 446. (4) Plaintiff's testimony as to his actions just previous to the accident shows that he was attentive to his surroundings; that he could hear an ordinary automobile horn at the distance of about a block; that he heard no horn or other automobile signal before he was struck. This was sufficient evidence to take to the jury the issue of Nowak's negligence in failing to warn plaintiff. Dutcher v. Railroad, 241 Mo. 137, 165; Murray v. Railroad, 101 Mo. 236; Miller v. Harvey, 199 Mo. App. 634; Reed v. Railroad, 94 Mo. App. 371. Plaintiff was not conclusively bound by Nowak's statement that he sounded his motor cycle horn twenty-five feet south of the safety post. Maginnis v. Railroad, 268 Mo. 675. The rule that where the pedestrian is aware of the approaching vehicle, failure to warn will not be considered causal negligence, cannot be applied to this case, where plaintiff became aware of the motor cycle's approach when it was only fifteen or twenty feet away, and it was going at the rate of ten miles an hour, or fifteen feet per second, so that after discovering it, plaintiff had no opportunity to save himself. The pedestrian is entitled to a reasonable, timely and adequate warning, not merely to knowledge at a time when the vehicle is already upon him. Yoakum v. Railway, 199 S. W. 265; McKinney v. Bissel, 263 S. W. 535; Steigleder v. Lonsdale, 253 S. W. 487; American Ins. Co. v. Rys. Co., 200 Mo. App. 330; Woodis v. Rys. Co., 199 Mo. App. 352; McKenzie v. Rys. Co., 216 Mo. 22. (5) The court, at defendant's request, by Instructions 4 and 5, submitted to the jury as issues of fact, the question whether Nowak was a servant or independent contractor, and the question regarding the speed of the motor cycle. Defendant is now estopped to claim that the evidence as to either of these issues was insufficient to raise a question for the jury. Kinlen v. Railroad, 216 Mo. 166; Jennings v. Railroad, 99 Mo. 399; Lange v. Railroad, 208 Mo. 475; Deitring v. Transit Co., 109 Mo. App. 555; Whiteaker v. Railroad, 252 Mo. 459; Gayle v. Fdy. Co., 177 Mo. 449, 455; Berk-

son v. Ry. Co., 144 Mo. 219; Ellis v. Harrison, 104 Mo. 279; Hopkins v. Modern Woodmen, 94 Mo. App. 409. (6) Plaintiff's Instruction 1 was not erroneous in telling the jury that it was defendant's duty to exercise the highest degree of care in operating the motor cycle. The validity of Section 19 of the Motor Vehicles Act, Laws 1921, Ex. Sess., p. 91, has been upheld as against the precise objection now raised by appellant. Lauck v. Reis, 274 S. W. 827. (a) Said instruction is not subject to criticism because it submitted the issues of speed and failure to warn. There was substantial evidence before the jury as to both of these propositions. Meenach v. Crawford, 187 S. W. 882; Sandifer v. Lynn, 52 Mo. App. 553. (b) Appellant joined in submitting the issue of speed to the jury and is estopped to complain.

LINDSAY, C.—This is a suit for personal injuries sustained by Joseph Hoelker, wherein he had a verdict and judgment against defendant, publisher of the Times newspaper. After the submission of the case on appeal, Joseph Hoelker died, and the cause has been revived in the name of his administratrix.

Joseph Hoelker was struck by a motor cycle, owned and operated by one Andrew Nowak. It was alleged that the motor cycle was negligently operated by the defendant, its agents and servants. The injury occurred while Hoelker was walking westward from the sidewalk at the southeast corner of Broadway and St. Charles streets in the city of St. Louis, for the purpose of boarding a street car northbound on Broadway, and which, at the time, had stopped to take on passengers. This street car was on the east one of the two tracks on Broadway. St. Charles Street runs east and west. Nowak was proceeding northward on the east portion of Broadway. He was employed by the defendant to deliver newspapers to defendant's newsboys at various points in the city, and the motor cycle had an attachment or side car for carrying newspapers.

The petition charged negligence in the operation of the motor cycle in several particulars, but the plaintiff submitted his case to the jury by his Instruction 1, upon two of the specified grounds of negligence—rapid and dangerous speed of the motor cycle, and failure to give warning of its approach. The answer was a general denial, with the plea that the plaintiff's injuries were due to his own negligence in failing to look, failing to heed the warning given by the operator of the motor cycle, and suddenly walking into the path of the motor cycle. There followed a plea setting up the terms of the contract alleged to exist between Nowak and defendant as constituting him an independent contractor, and not a servant of defendant.

The assignment of error coming first in order and importance, arises upon the claim made upon the trial, and here, that under the evidence the plaintiff was not entitled to go to the jury. This claim is urged chiefly upon two grounds, first, that under the evidence and as a matter of law, Nowak was an independent contractor for the result of whose acts the defendant is not responsible, and next, that there is no substantial. evidence to show that the motor cycle was moving at a rapid and dangerous rate of speed, or, that there was a failure to warn of its approach. Added to these is the contention that the plaintiff was careless in the respects above mentioned.

There was no written agreement between the defendant and Nowak. The testimony as to the relation between them was given by Nowak, called by the plaintiff, and by Mr. Bangert, superintendent of deliveries for defendant. The testimony is all to the effect that the motor cycle was owned by Nowak, and that he paid all expenses of its upkeep and operation.

Nowak, who at the time of the trial, was still delivering papers for defendant, testified that he was 26 years old; that previous to his said employment he had worked in a blacksmith shop for three years; before that, had worked in a tent and awning place, and, had been in the Merchant Marine for six years. His work for defendant began in September, 1922. The injuries to plaintiff occurred on November 21, 1922. Nowak testified in substance that he wanted an outside job, and upon the suggestion of a friend he went to the Times building, and got this job, after talking with a man called "Jeff;" that there were, at the time, three other men who went with him, and that they all talked to Jeff, and started to work at the same time. Stating the conversation, he said: "Jeff asked us if we had motor cycles. We told him 'yes.' He asked us if we wanted to deliver some papers for him and we told him 'yes.' We asked him how much money we would get, and he told us he would pay us six dollars a day if we delivered some papers for him down town—only down town. We had an argument about not getting enough pay, paying our own repairs for our motor cycles. We tried to get forty dollars a week. He told us to try six dollars a day for a couple of days, and see if we can get along with that. If not, he said, he would take it up within a couple of days more." For the purpose of making such deliveries, he and the others were told to be there, that is, at the Times building, at eleven o'clock, and, at that time he and the others received cards and took certain directions. The cards were marked for certain streets and street corners, and with the names of the newsboys to whom the papers were to be delivered, and the number to be given to each boy. There were five deliveries to be made each day, the first at eleven o'clock, the next at 1:15 in the afternoon, another at 2:45 in the afternoon, and two later edi-

tions. Nowak, as well as the others, was required to be at the Times building at fixed times, for the purpose of promptly taking out the papers of each one of the various editions.

Nowak was not instructed to travel certain streets in order to reach the various particular corners where papers were to be delivered, but he was required to be on hand promptly to receive papers for each delivery and was given a card stating the number to be delivered respectively to the boys at each of the designated corners.

Mr. Bangert, called by defendant, said: "I told Mr. Nowak when he came to work—I told him I would give him a card and he would make these runs five times a day; for that I would pay him six dollars a day. Then I asked him if he had a motor cycle—what kind—shape it was in, and he said: 'First class.' I told him I would put him to work the following Monday." The witness said he gave Nowak no directions as to how he should go, or the manner in which he should drive the motor cycle. He further testified that he made the arrangement with Nowak for no certain length of time. Inquired of as to that, he said: "I hired Mr. Nowak, and as soon as the work didn't prove satisfactory to me—well—it was up to him."

"Q. Any time his work was not satisfactory, you would drop him? A. I would drop him.

"Q. Discharge him? A. I would discharge him."

Nowak testified that after he began delivering newspapers for defendant he did not do any delivery work for anyone else with the motor cycle. It does not appear from the testimony that previous to going to work for defendant he had done any delivery work, or had been engaged in any other work than the kinds that have been already stated.

The question of whether Nowak, in the service rendered by him to defendant was under the control of defendant, was submitted to the jury under the plaintiff's Instruction 1, authorizing a recovery, and the question in converse form was also submitted by Instruction 4 for defendant.

**Independent Contractor.**

Counsel for plaintiff urge that because the question was submitted at defendant's request by said Instruction 4, the defendant is estopped to claim that the evidence was insufficient to raise a question for the jury, and cite Kinlen v. Railroad Co., 216 Mo. 145, 166; Jennings v. Railroad Co., 99 Mo. 394, 399; Whiteaker v. Railroad Co., 252 Mo. 459; Berkson v. Railroad Co., 144 Mo. 219, and other cases. What was said in those cases does not sustain the plaintiff's claim under the facts of this case. If Nowak was an independent contractor, plaintiff could not recover against the defendant, although Nowak might have been negligent in the operation of the motor cycle in all the respects charged. In overruling the demurrer, the court necessarily held there was evidence to go to the jury on the

vital question of whether Nowak was the servant of defendant. · The defendant made that an issue all through the case; and, by the adverse ruling of the court on the demurrer, the defendant· was compelled to go to the jury upon that issue. It was an issue, single in character, but there were several specific acts of negligence charged. One or more might be submitted; others not. 

When the court submitted that issue under plaintiff's instruction authorizing a recovery by plaintiff, it was over the objection of defendant, and the giving of defendant's instruction presenting that issue conversely, and so as to authorize a verdict for defendant, did not estop the defendant from pursuing here his exception to the court's ruling upon the demurrer, as to that issue. [Kennefick-Hammond Co. v. Fire Insurance Society, 205 Mo. 307; Koerper v. Glennon, 209 Mo. App. 489; McCaughen v. Mo. Pac. Ry. Co., 274 S. W. (Mo. App.) 97.] For the reason indicated, we hold that the rule announced in Torrance v. Pryor, 210 S. W. 430, and State ex rel. Mississippi River & Bonne Terre Ry. v. Allen, 272 S. W. 925, does not apply, nor foreclose defendant's right to challenge the sufficiency of the evidence upon that point.

In Fink v. Missouri Furnace Co., 82 Mo. 283, and Crenshaw v. Ullman, 113 Mo. 639, and in other cases there has been quoted with approval the statement as to what constitutes an independent contractor, made in Thompson on Negligence, Vol. 2, page 899, Section 22: "The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractors or his servants, committed in the prosecution of such work. An independent contractor . . . is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants."

In the Crenshaw case it was said: "It is often very difficult to determine when a person is an agent or employee, and when a principal."

In Gayle v. Missouri Car & Foundry Co., 177 Mo. l. c. 447, it was said: "But it is not easy always to say that the facts of a given case bring it within the definition of an independent contractor." Necessarily the determination of each case must depend upon its own facts, and in applying the rule courts must give heed to the varying circumstances bearing upon the question whether the person rendering the service represents the will of his employer only as to the

result of the work, and not as to the means by which it is accomplished. In the Gayle case, 1. c. 447, it was also said: "When the facts are .undisputed no doubt exists that the court may declare as a matter of law whether one is an independent contractor or merely a servant, as in Long v. Moon, 107 Mo. 334, but where the facts are disputed the proper course it seems to us must be to leave it to the jury under proper instructions to say whether one was an independent contractor or a servant, accordingly as the facts are found." The facts in the case at bar upon this point cannot be said to be in dispute in the sense that there is a direct contradiction as to any specific fact between the testimony given for plaintiff, and that given for defendant. The question here is thus not so much of contradictions upon the terms of the agreement, as one of definiteness of the arrangement between Nowak and defendant; and the inquiry is whether upon that arrangement it must be said as a matter of law, the former was an independent contractor. If he was not an independent contractor, his relation to defendant was that of a servant. It was not necessary that the agreement be in writing, as was the agreement between the parties in Gall v. Detroit Journal Co., 191 Mich. 405; a case cited by counsel for defendant; but, to sustain the claim of the defendant, it is necessary for it to be held that the evidence definitely shows facts constituting Nowak to be an independent contractor, and enforces that conclusion as a matter of law.

The question whether a person engaged in doing a certain work is an independent contractor arises under an infinite variety of circumstances. The general determinative test is whether the person is engaged to produce a certain result, and in doing so, is not subject to the control of the other party as to the means, or method used in producing the result. Sometimes the result is a single thing, as the erection of a building of a designated character, for a fixed total sum, and sometimes it is the performance daily, or from time to time, of a succession of acts, each complete in itself, and to be paid for upon the basis of the completion of each such successive act, or upon the basis of the time during which the acts are performed. In 19 American Law Report, 226, there is an extensive annotation wherein have been gathered a score or more of definitions as formulated by courts, and text-writers, with citation of a great number of cases, including cases wherein the person having the work done retained a large measure of control over the means or manner of doing the work, and wherein, notwithstanding, it was held that the relation of independent contractor existed.

In Fink v. Missouri Furnace Co., supra, the person held to be an independent contractor received a fixed sum for each load of sand extracted from land of the defendant and hauled to its plant, using in doing so his own tools and conveyance, and his own method in

taking out the sand. In Gayle v. Car Foundry Co., the persons concerned received a certain sum for every car framed by them, in sheds provided by the defendant, using in part machinery and appliances provided by the defendant. In Crenshaw v. Ullman, the person concerned had contracted with a city to do the entire work of paving an alley. The right to inspect the work, as to materials used and to secure compliance with the terms of the contract, was reserved. In these and in all the cases, all the evidentiary matters are considered in the inquiry whether, in the given case, the relation of independent contractor obtained. The right to inspect the work to be done does not of itself make the relation one of agency, nor does the right to discharge the person or to require discharge of someone employed by him, nor is the manner of payment or character of the unit of calculation of payment for the thing done, a conclusive test of the relation. Ownership of the appliance used, and following generally an independent occupation are not always conclusive tests, but all these things are considered only as aids in the given case in determining the relation between the parties, or specifically, whether one is the agent of the other, or is himself a principal. "Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact." [31 C. J. 474.]

The case of Gall v. Detroit Journal Co., 191 Mich. 405, much relied upon by counsel for defendant, is like this case in the nature of the work to be done. There, under contract in writing, one Rebtoy undertook to make delivery of newspapers for defendant to such persons and at such places, and along such route or routes, and upon such schedules, as might from time to time be furnished to him. He was subject to penalty, for delay or default in delivery according to the schedule. Rebtoy owned and operated the automobile in which he made deliveries, and was paid at the rate of $40 a week. The agreement, however, contained the following provision: "The said second party shall make such delivery and distribution according to his own means and methods of conveyance which shall belong to and be in the exclusive charge and control of said second party, and which shall not be subject to control or supervision by said first party excepting as to the results of said work." It was also agreed that either party might terminate the contract at any time without notice. Rebtoy, the court said, was not a drayman, had no drayman's license, and had no other employment than that for defendant. It was held he was an independent contractor. This conclusion was grounded upon the express provisions of the contract whereby it was held Rebtoy had a contract for a specific piece of work—the delivery of the papers—and that it was nonetheless specific, because the places at which they were to be delivered or the persons to whom

they were delivered might change, and that in driving from one point of delivery to another he might drive upon any street he chose; and farther upon the provision quoted under which, it was said, he could "effect the result by any means or by any conveyance and in any way he saw fit." It was remarked that "he could use a horse, an automobile or carry the papers on foot, provided he got them to the right persons at the right places and upon time." The conclusion, and the consideration thereto moving the Michigan court are stated at page 410: "No reason is seen why a man may not agree, as an independent contractor, to deliver all, or part of the papers printed by a publisher, of the groceries sold by a groceryman, or of the goods sold by a merchant, if the method and means for doing so are left entirely to him without any right of control by the employer. In the instant case either party had the right to terminate the contract at pleasure. That might be a very important circumstance in some cases, but under this contract any threat by the employer, express or implied, to use the right, for the purpose of controlling Rebtoy as to the method or means of making deliveries, would have been in violation of the terms of the contract. So long as the contract was adhered to, Rebtoy was independent in all of the methods of doing the work."

The chief difference between that case and this one, not without materiality, lies in the fact that here the inference reasonably arises from what was said in the informal conversation between the parties, that the means required to be used by Nowak in making his deliveries, was a motor cycle. In the case at bar it is not shown that there was any express agreement as to a termination of the contract by either party, nor was the contract for a definite time, and this is to be implied from the statement of Mr. Bangert as to his right to drop or discharge Nowak at any time his work was not satisfactory. This may be regarded as of more importance in this case than the like condition in the Michigan case, because, there by express agreement there could be no control by the defendant over the means or method of making deliveries, in respect to the use of a particular kind of conveyance, or of any conveyance. This feature of the opinion in the Gall case was pointed out by the St. Louis Court of Appeals in Semper v. American Press, 273 S. W. 186. In that case delivery of newspapers for the defendant was being made by one Bresler by means of an automobile owned and driven by him. A bundle of papers thrown from the automobile by a boy permitted by Bresler to accompany and assist him, struck and injured the plaintiff in that case. Bresler had been employed by defendant for four successive years to deliver the baseball edition of the newspaper. He was paid a certain sum for each trip, payable weekly. In that case the court stressed somewhat the fact that Bresler was not engaged in the work

of delivering papers as an independent employment or occupation, but performed that character of work for defendant only, and, further, that he was not engaged generally in the work of hauling commodities as an independent employment or occupation; and said also it did not appear that he was entitled to discard the automobile, and employ other means of conveyance or other methods of making delivery.

In Thomassen v. Water & Light Co., 312 Mo. 150, 251 S. W. 450, cited for defendant, a foreman for the defendant company had an arrangement with it, whereby, after the close of the day's work, he would take certain of the workmen to their homes, for which service he received the sum of three dollars for each trip, which was pay in addition to his daily wage as foreman. For this purpose he used his own automobile. It was held that as to this service he was an independent contractor. The decision seems to rest upon the ground that on the occasions when the company hired him for that service, it merely directed him to take the company's employees to or from the particular point at which the mean were working, but at no time had directed in any way the manner in which he should do so, nor what route he should take. It was said there was nothing from which it could be inferred that the company reserved any right to control or direct him in doing that work.

In the case at bar the inference could reasonably be drawn that right of control of the means was assumed and exercised by the defendant. We hold that under all the circumstances shown the question was one for the jury.

Next to be noticed is the claim that there was no such proof of negligence in the operation of the motor cycle as entitled the plaintiff to go to the jury. The claim goes to the questions of the rate of speed, and the failure to warn. The time of the occurrence was shortly after four o'clock in the afternoon; the weather was good, and the street dry. The evidence was that Hoelker left the sidewalk at the southeast corner of Broadway and St. Charles streets to take the street car northbound on Broadway, which stopped at that crossing. The only witnesses testifying as to the manner in which the plaintiff and the motor cycle came into collision were the plaintiff himself, and Nowak, called by plaintiff. The policeman who was directing traffic at that crossing did not see the accident. He testified that he was waiting to give a northbound car the signal to proceed, when his attention was called to the accident to the plaintiff; that the corner is in the eastern business section of that city, and that from four o'clock on, the traffic at that point began to get heavy; that this street car was stopped at the usual place at that corner, to discharge and receive passengers. The plaintiff was about 65 years old and was at the time employed as

*Speed and Warning.*

a street cleaner. He had finished his work for that day, and was on his way home. A policeman also testified that there were "safety posts" on Broadway at the point where this northbound car stopped; that the safety posts were placed about three feet from the (east) track, leaving about a foot and a half between the safety line and the street car, and that there was a space of eight or ten feet from the safety line to the east curb of Broadway. There were automobiles, one or more, parked along the east curb of Broadway, south of the crossing. The one next to the crossing was about fifteen or twenty feet from the crossing line. The testimony of the plaintiff himself was that this automobile was parked diagonally from the curb. The other testimony was that it stood parallel with the curb. Nowak testified that as he went north on Broadway the street car was ahead of him; that he was east of, but near, the track; that when the street car was near the crossing he was about twenty feet in the rear of it; that when he saw the car slowing up, and passing the safety post, he turned his motor cycle to the right to keep away from the safety post, and over within two to four feet of the curb. The plaintiff testified that as the car stopped, he left the sidewalk, and was walking westward at an ordinary walk, and in the direction of about the center of the street car, at the time he was struck.

The plaintiff said it was the front wheel of the motor cycle which struck him. Nowak said it was the wheel or fender of the side car which struck the plaintiff. He had copies of the newspaper in the side car at the time, and he was on his way to make deliveries. On his cross-examination by counsel for defendant he testified that he sounded the horn on the motor cycle when he was about twenty-five feet away from the safety post, and that he travelled about thirty feet more after sounding the horn before he struck the plaintiff, and that the plaintiff was about two feet from the sidewalk when struck. The plaintiff testified that he heard no signal or horn sounded; that when he was struck he was about six feet from the line running from post to post and about twenty feet from the post nearest to St. Charles Street; that he was walking west when struck; that he looked to see whether there was traffic coming, but did "not see nothing coming down the street;" that he looked north and south both ways; that just as he came off the sidewalk, he looked up and down and saw nothing coming; that he could not look in back of the nearest automobile.

Plaintiff, on his cross-examination said: "I didn't see nothing coming, and all at once I seen the thing come along the street and hit me; that is all I know." Later on in his cross-examination he said he did not see it coming before it hit him. On his redirect examination he corrected that statement and said: "Yes, I seen it coming around the automobile; that is right, now." Asked what he

did, he said: "I didn't have time to do nothing. It struck me right there. Just that quick it went upon me." On his recross-examination he again said he saw it coming around the automobile, which was about fifteen or twenty feet away. "I remember I seen it coming around the corner; around the automobile standing this way, and I seen it coming around this way, going north on Broadway (indicating)." Nowak, on his direct examination said: "When I seen this street car slowing up for Broadway and St. Charles and clearing the safety post I turned to the right. Some man came from the sidewalk. I knocked him down." On his cross-examination he said: "The street was clear. It happened quick, because he was on the sidewalk. It happened quick. I didn't see what he was doing before. I never expected him to get off the sidewalk." Asked when he first saw plaintiff, he said: "I seen him when he was right against my side car." He further said that he was keeping watch ahead of the motor cycle at the time, and that he first saw plaintiff when he was right at the wheel of the side car, and said that the plaintiff got off the sidewalk quickly. On his direct examination Nowak was asked how fast he was going "at the time of the accident." He said: "I was going between seven and ten miles." He was asked how quick he could stop the motor cycle when going between seven and ten miles an hour, under the circumstances there, and said: "When I hit the safety post I had the speed slowed down. It was less than that. I stopped in twelve inches." The plaintiff himself testified that when he was struck he landed on the street and was dragged or rubbed over the street; that the dragging tore the flesh all off his left buttock. Both bones of plaintiff's left leg were broken, a little below the knee. The distance he was dragged over the street was not shown. Plaintiff estimated that the speed of the motor cycle at the time it struck him was ten miles an hour. Asked on his cross-examination how he would know it was going ten miles an hour if he did not see it, he said: "Because it did not take no time until it hit me right there, and there was nothing in the way." Answering a similar question he said: "Well, according to the way it hit me, I guess it was coming ten miles an hour."

Counsel for defendant argue that Nowak's testimony that he sounded the horn is conclusive upon the plaintiff. This is upon the ground that Nowak was plaintiff's witness, and also that there was no other testimony upon that point entitled to be considered.

**Sounding Horn.** While plaintiff could not and did not attempt to impeach Nowak by showing that he had made contradictory statements elsewhere upon that point, the plaintiff was not precluded from showing, if he could, either by himself or by another witness, that the horn was not sounded. [Maginnis v. Railroad, 268 Mo. l. c. 675.] Counsel insist that the mere negative testi-

mony of a witness that he did not hear a sound or a warning, amounts to, nothing, and is inadmissible against the positive testimony that the warning was given, and have cited thereunder, McGrath .v. St. Louis Transit Co., 197 Mo. 97; Sanders v. Southern Electric Railway Co., 147 Mo. 411; Armstrong v. D. & R. C. Railroad Co., 195 Mo. App. 83; Bennett v. Metropolitan Street Railway Co., 122 Mo. App. 703, and other cases. The actual or relative value of negative testimony of this character has been considered in numerous cases. Sometimes such testimony has been held to be of no probative value, and sometimes its weight is a matter for the jury. It depends upon the circumstances in the particular case. [Murray y. Railroad, 101 Mo. 236, 242; Hanlon v. Railway, 104 Mo. 381; Dutcher v. Railroad, 241 Mo. 137, 165; Miller v. Harvey, 199 Mo. App. 627.] In the Murray case the witnesses on the part of the plaintiff testified that they did not hear the bell of the engine, while those of defendant testified positively that the bell did ring. It was said that where the witnesses are of equal credit, the positive evidence that the bell was ringing is as a general rule, entitled to more weight than that of witnesses who say they did not hear it. It was said: ''Much depends upon the situation and position of the witnesses and the attention they were giving at the time. All these matters and the credit to be given to the witnesses were questions for the jury to consider, and the ultimate question whether the bell was ringing; or not was one of fact, and was properly submitted to the jury.'' The value of such testimony depends upon the circumstances as to whether the witness is a person of good hearing; the distance he. was from the object in question; whether there were other noises, or means of distracting his attention, and the like. In this case the plaintiff's testimony was that his hearing was good; that as he stepped from the sidewalk he looked in both directions, and that he heard no signal. Nowak's testimony was that he sounded the horn when twenty-five feet from the safety post, and that after sounding he ran about thirty feet before striking plaintiff. Under such circumstances we cannot say that the testimony of the plaintiff that he heard no signal is of no probative value, and rule that, under all the circumstances here shown, the question whether the horn of the motor cycle was sounded was one for the jury.

It is also the contention that there was no evidence to warrant submission of the question whether the speed of the motor cycle was rapid and dangerous under the circumstances. This is grounded upon the claim that plaintiff made statements contradictory **Speed.** in character as to whether he saw the motor cycle before it struck him, and therefore it cannot be said there was evidence that he saw the motor cycle, and, for that reason, there was no basis shown upon which he could properly express an opinion as to the

speed of the motor cycle. Preliminary to discussion of the foregoing it is proper to observe now that at the time of the occurrence of the injuries complained of, the act approved July 30, 1921, concerning Motor Vehicles (Laws 1921, Ex Sess., pp. 76, 107), was in effect. The constitutionality of that act was challenged by the defendant in the lower court, and for that reason the appeal herein was granted to this court. The validity of the act in question was before Division One in Lauck v. Reis, 310 Mo. 184. In that case the same objection was made that is made here, that the act was passed at an extra session, and that Section 19 of the act was a subject not included in the proclamation or in any special message of the Governor, in violation of Section 55 of Article IV, and Section 9 of Article V, of the Constitution. The objections were all resolved in favor of the validity of the act, and upon thorough discussion in the opinion of SEDDON, Commissioner. Nothing is suggested here which demands a reconsideration of the question. Under the provisions of Section 19 of the act mentioned, it is required that ''every person operating a motor vehicle on the highways of this State, shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care.'' Subdivision ''M'' of Section 21 of the act prescribes the care to be exercised by the operator of a motor vehicle upon streets wherein the motor vehicle is to the rear of, and going in the same direction as, a street car stopping to take on or discharge passengers. He is required to stop five feet from the rear of the street car; but it is provided also that the operator of such motor vehicle ''may pass such street car where a safety zone is established by the proper authorities, or where said operator or driver may pass such car at a distance of at least eight feet clearance therefrom; and provided further, that he shall slow down and proceed cautiously.''

As has already appeared, there is evidence in this case of the existence of ''safety posts'' on Broadway, and presumably, although not directly shown, a safety zone existed or the requisite clearance space, whereby the driver of the motor cycle might pass the street car in question, under the proviso that in doing so he could slow down, and proceed cautiously.

Counsel for defendant insist that when a witness makes conflicting and irreconcilable statements there is no evidence thereunder to be submitted for the determination of the jury, and that until he can determine for himself what he saw or did not see, neither court nor jury can make that determination for him. There are cases wherein it has been so held. [Oglesby v. Mo. Pac. Ry. Co., 177 Mo. 277, 296; Hook v. Ry., 162 Mo. 569; Van Bibber v. Swift Co., 286 Mo. 317.] The argument next proceeds upon the theory that the plaintiff's estimate of the speed of the motor cycle was based upon his view of

it before it struck him, but that since it must be held he did not see.it before it struck him, he was not entitled to express an opinion as to its speed. Cases are cited wherein is discussed the knowledge and opportunity to be possessed by a witness to entitle him to express his opinion upon the speed of a vehicle. [McCreery v. United Railways Co., 221 Mo. 18; Deane v. St. Louis Transit Co., 192 Mo. 575; Campbell v. Railway Co., 175 Mo. 161; Priebe v. Crandall, 187 S. W. 605.] A high degree of expert knowledge is not required, but the witness must have some knowledge gained from observation and experience, and must have had in the given case an opportunity to observe the movement of the vehicle. We will not undertake to say from the evidence that the plaintiff did not see the motor cycle before it struck him. That it was near to him when he saw it, if he did, is plain, but under his statements, and especially in his redirect and recross examination, the question whether he saw it was not one to be conclusively settled against him. We cannot say the contradictions in his testimony were such as to wholly destroy it upon that issue. [Benjamin v. Railroad, 245 Mo. 615; Huff v. Railroad Co., 213 Mo. 515; Rowe v. United Rys., 211 Mo. App. 541; Hamra v. Orten, 208 Mo. App. 36.] The plaintiff had been a street cleaner, and upon the streets of the city for eight or nine years prior to his injury, and according to his testimony was somewhat accustomed to observe the speed of vehicles which he saw. The reading of the testimony of the plaintiff shows that he was an illiterate man, and shows too that his estimate of the speed of the motor cycle was based upon such view as he had, and was in part, as he expressed it, "the way it hit me," and in his answer to the question how he knew it was going ten miles an hour if he did not see it, wherein he said: "It didn't take no time until it hit me right there."

Under the statute the operator of the motor cycle was bound to use the highest degree of care. That degree of care was to be exercised by him at a time and place of heavy traffic. When he attempted to drive his vehicle in the space between a street car halted to take on passengers, and the sidewalk from which persons were coming to board the street car, he was required to "slow down and proceed cautiously." That statutory provision did not undertake to fix arbitrarily the speed to which he should slow down, but did require the exercise of caution, and that the rate of speed should be adapted to the situation described, and the circumstances surrounding it. Whether the driver met that duty in this case was one to be determined by the jury.

But, beyond what has been said already, we think defendant should not now be heard to say there was no evidence to go to the jury upon the question of dangerous speed. Defendant asked and was given Instruction 5 as follows: "The court instructs you that the

fact that the motor cycle and side car were being driven at a high rate of speed at or just previous to the time they struck plaintiff (if you so find) raises no presumption that the accident was caused by such excessive speed. Therefore you are instructed that the plaintiff cannot recover because of such excessive speed unless you find and believe from the evidence that the injury would not have occurrd if the motor cycle and side car had not been running at such high rate of speed." The defendant had asked no instruction withdrawing the issue of rapid and dangerous speed from the jury. This was one of the several acts of negligence charged; and, having procured the giving of the foregoing instruction, we hold under the authority and the reasoning in Torrance v. Pryor and State ex rel. Mississippi & Bonne Terre Railroad Co. v. Allen, defendant should not now be heard to say there was no evidence of high and excessive speed.

The question was whether the plaintiff was himself negligent, was a question for the jury. His testimony was that he looked up and down as he left the sidewalk and that he proceeded at an ordinary

**Contributory.** walk. Nowak's testimony on his cross-examination was that plaintiff moved quickly off of the sidewalk. The objection to plaintiff's Instruction 1 under this head that there was no valid law requiring the operator of a motor cycle to exercise the highest degree of care has been disposed of. The instruction was not erroneous in requiring that degree of care.

Objection is made to that instruction also upon the theory that if the plaintiff saw the motor cycle, the failure to warn by sounding the horn could not be causal negligence, and that the driver was

**Causal Act.** then under no duty to warn, and that it was error to submit the question of failure to warn. The objection does not fit the facts of this case. Nowak said he sounded the horn when twenty-five feet from the safety post while the car was slowing down for the stop, and that he ran thirty feet before he struck the plaintiff and did not see the plaintiff until he struck him or until plaintiff was against the wheel. The plaintiff said he heard no signal, and his evidence in effect is that when he saw it he did not have time to escape.

Another objection to Instruction 1 is that it uses the word "employee" in reference to Nowak; and it is urged that the word is one not confined in its meaning to servants, but impliedly includes inde-

**Employee.** pendent contractors. The instruction however, in its use of the word "employee" directly requires the finding that Nowak was an employee and in performing said work, was "subject to the orders and control of the defendant." Upon that ground and also because the court gave defendant's Instruction 4 which clearly stated defendant's theory upon that issue, the jury

could not have been misled or confused by the use of the word "employee" in the connection in which it was used in plaintiff's instruction.

Complaint is made of statements of counsel for plaintiff in his closing argument. The record of what took place and the subject of this complaint is as follows:

**Argument to Jury.**  "MR. MARSALEK: He knows it was six or eight feet. "MR. BUDER: He said it was two to four feet. We object to that because the witness Nowak was the plaintiff's witness.

"THE COURT: The time is up, Mr. Marsalek.

"MR. MARSALEK: He knows he was not honest in his statement.

"MR. BUDER: We object to any statement as to his dishonesty.

"THE COURT: The time is up.

"MR. BUDER: Save our exceptions."

The statement of counsel for plaintiff had reference to the difference in the statement of the plaintiff himself and of Nowak as to the distance the plaintiff was from the sidewalk at the time he was struck. Counsel cite cases holding that a party who puts a witness upon the stand vouches for his truthfulness, and cannot impeach his reputation nor prove statements inconsistent with his testimony on the trial. [Rodan v. St. Louis Transit Co., 207 Mo. 392; Brosius v. Lead & Zinc Co., 149 Mo. App. 181, and other cases.] It is urged also that the statements of counsel were outside the record, but this claim is not sustained. As to the objection made it would seem that in the absence of any request that counsel for plaintiff be rebuked by the court, a reversal ought not to be ordered. This should not be done under such circumstances except in extreme cases. [Norris v. Railroad, 239 Mo. 695, 721; Torreyson v. United Railways, 246 Mo. 696, 707.] We are not warranted in this case in saying that the statement of counsel for plaintiff demands a reversal.

It is also contended that the verdict for $4,500 is excessive. Both bones in plaintiff's left leg were fractured, a little below the knee cap. After he was injured he was taken to the city hospital where a cast was placed about the injured leg. He remained there about two weeks, was then taken to his home, and thereafter was under the care of Dr. Carl Ottersbach.

**Excessive Verdict.**

The trial occurred one year after the time the plaintiff was injured. Dr. Ottersbach, testifying as to plaintiff's condition at the time of the trial said: "The muscles are paretic and cannot flex or extend in the ordinary manner, and there is a swelling about an inch downward from the knee." He said the callus about the fracture existed at the time of the trial, about one-half inch below the knee joint, and that plaintiff's leg was swollen from the knee to the ankle; that the swelling was more pronounced after he used the leg. He gave it as his opinion that plaintiff would never recover the

entire normal use of his leg, but that there wold be a slow improvement with the years to come; that plaintiff could not then walk without the aid of crutches and he could not tell how long that condition would continue. The plaintiff had been able to do no work since his injury. At the time he was injured he was receiving $2.75 a day, working six days in the week. He was 65 years old at that time. He testified that he suffered pain at times, but not all of the time.

Counsel have cited certain cases as supporting the claim that the verdict is excessive. Haynes v. City of Trenton, 108 Mo. 123, is cited. In that case there was a verdict for $6,000, which the trial court reduced to $4,500, and it was held upon appeal that the latter sum was excessive, and it was also said that the original verdict bore the marks of passion and prejudice on its face, and there was a remanding of the cause. In that case the plaintiff's leg had been broken, but he was able to return to his work after about fifteen weeks, and at the time of the trial he was working as a brakeman. In Harris v. Street Ry. Co., 168 Mo. App. 336, the plaintiff suffered a fracture of a bone in his instep, and the ligaments were torn. He was able after three months to return to his work. The after result, the court said, was from stiffness, making him somewhat more awkward. A verdict for $5,000 was reduced to $3,000. In Dent v. Traction Co., 145 Mo. App. 61, the plaintiff, a woman, had a verdict for $5,500, which was held to be excessive to the extent of $2,000. The conclusion that the *remittitur* should be entered appears to have been based upon the fact that the physician, in his testimony, was unable to say there had been a fracture of the knee cap, and the conclusion was that the plaintiff's injury was probably "limited to some stiffness of the knee and consequently some lameness."

The record in the instant case does not show circumstances leading to the conclusion that the verdict was the result of passion and prejudice, nor are we justified in interfering with the verdict on the ground that it is excessive.

It results from what has been said that the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of LINDSAY, C., in Division One, is adopted as the opinion of Court en Banc. *Ragland, Atwood* and *Gantt, JJ.*, concur; *White* and *Blair, JJ.*, concur in the result; *Walker, C. J.*, dissents because of lack of jurisdiction in the Supreme Court; *Graves, J.*, dissents on ground that under the evidence Nowak was an independent contractor.