## MARCHAND v. RUSSELL.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—DEFINITION.

Independent contractor is one who, carrying on independent business, contracts to do piece of work according to his own methods, and without being subject to control of his employer as to means by which result is to be accomplished, but only as to result of work.

2. SAME.

One whose contract of employment obligated him to travel from place to place to call on dealers, collect accounts due employer, to establish new dealers where possible, to promote sale of employer's products, and to make special call if requested to do so, was employee and not independent contractor.

As to liability of employer for injuries inflicted by automobile while being driven by or for salesman or collector, see annotation in 17 A. L. R. 621; 29 A. L. R. 470; 54 A. L. R. 627; 60 A. L. R. 1163 *et seq.*

3. SAME—RIGHT TO CONTROL RATHER THAN ACTUAL CONTROL TEST.
    Right to control, not only as to result to be accomplished, but
    also as to means to be used, is decisive of existence of relation
    of master and servant, so that, to establish its existence, actual
    control need not be shown if right to control exists.

4. SAME—MOTOR VEHICLES—EMPLOYER LIABLE REGARDLESS OF OWN-
    ERSHIP OF CAR USED BY EMPLOYEE.
    That employee was using his own automobile in his employer's
    service at time it collided with sled and injured plaintiff would
    not affect employer's liability therefor.

5. SAME—NEGLIGENCE—MASTER LIABLE FOR NEGLIGENT OPERATION
    OF CAR BY PERSON RIDING WITH EMPLOYEE.
    That employee, using his own automobile in his employer's serv-
    ice, entrusted its control to another person sitting beside him,
    would not relieve him or his employer from liability to third
    party injured by its negligent operation.

6. SAME—ACTS OF PERSON USED BY EMPLOYEE ARE ACTS OF EM-
    PLOYEE.
    Person permitted by employee in his presence to operate automo-
    bile used in employer's service is but instrument employed by
    employee, and acts of such person are, in legal effect, acts of
    employee himself.

Appeal from Delta; Bell (Frank A.), J. Submit-
ted October 30, 1931. (Docket No. 219, Calendar
No. 35,917.) Decided March 2, 1932.

Case by Gideon Marchand against Robert V. Rus-
sell and Detroit Electric Company, a corporation,
for personal injuries received in collision on the
highway. Verdict and judgment for plaintiff. De-
fendants appeal. Affirmed.

*M. J. Kennedy,* for plaintiff.

*Dunham, Taylor & Allaben* (*Derham & Derham,*
of counsel), for defendant Russell.

*John J. O'Hara* (*James E. Coleman,* of counsel),
for defendant Detroit Electric Company.

Sharpe, J. A trunk line highway, M–28, also known as U. S.–41, runs through the village of Champion, in the county of Marquette, approximately from east to west. It is intersected near the railroad depot by a road running from the southwest to the northeast. About four o'clock in the afternoon of January 27, 1930, the plaintiff, driving a horse attached to a sled, approached the trunk line highway on the road intersecting it from the southwest. He was on his way from the postoffice to the depot with the mail. He stopped, and, seeing nothing upon the highway, proceeded to cross, and, before reaching a place of safety on the opposite side, his sled was struck by an automobile owned by the defendant Russell, and in which he was riding, but then driven by one Ray Zerbel, and he (plaintiff) was thrown from his sled and quite badly injured. Russell was at that time in the employ of the defendant Detroit Electric Company. The nature of his employment will be considered later.

In this action, brought to recover damages for his injury, plaintiff recovered a verdict against both defendants in the sum of $3,500. From the judgment entered thereon, the defendants have prosecuted separate appeals.

Two questions are involved in the appeal of the defendant Detroit Electric Company:

(1) Was Russell an agent or servant of the company, or an independent contractor?

(2) If he was an agent or servant, was he acting within the scope of his employment in permitting Zerbel to drive his car at the time of the accident?

1. Mr. Russell, called as an adverse witness, testified that his home was in Escanaba; that he was the owner of the car; that on the day of the accident he was a representative of the defendant company

in the upper peninsula; that his duties were "sales representative, and promotion work;" that it was a part of his duty to travel from town to town; that he worked continuously at it, and had for about seven months; that he reported the work done by him to the company; that at the time of the accident he was traveling in the line of his duty between Marquette and the copper country, and that he reported the accident to the company about two and one-half hours after it occurred.

He was later called by the defendants, and testified that he was paid $100 per week, which included his expenses, which were not reported, and, if his sales exceeded a certain amount, he also received a commission; that he decided on what towns he should visit unless the company gave him "a lead on some customer;" that he bore the expense of maintaining the car, and also used it for his pleasure; that he was privileged to use a bus or train if he desired to, and, if so, would himself bear the expense thereof; that he called on those having accounts with the company every two or three weeks, "the smaller accounts every 30 days;" that some of the officials of the company occasionally went with him in making such calls, and that he carried them in his car without charge. He was asked by defendants' counsel:

"In going about the business of making sales and promoting the business of the Detroit Electric Company, did you follow specific instructions, or did you use your own judgment as to that?"

And replied:

"Well, there are certain policies of course set down by the main office of the company, and beyond that I used my own good judgment."

John A. White, the manager of the branch of the defendant company at Grand Rapids, and who at that time had charge of the northern Michigan territory, testified that Russell was receiving $100 per week, which was to cover his salary and transportation; that it was divided on their books, "$50 salary and $50 transportation;" that the latter covered his expenses, including hotel bills; that his duties were "to call on the dealers we had, and of course establish new dealers wherever possible, and promote the sale of Majestic radio sets;" that he could himself plan his trips except he might be asked to make a special call on a dealer who was behind in his accounts, and that he had ridden with Mr. Russell on trips in the district.

This and many other courts have frequently been called upon to decide whether, on the rendition of service by one person to another, the relation of master and servant or that of independent contractor was created by the employment. In *Zoltowski* v. *Ternes Coal & Lumber Co.*, 214 Mich. 231, 233, the following from 26 Cyc. p. 1546, was quoted and said to epitomize the holdings of this court upon the question:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the

furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.''

This quotation also appears with approval in *Hanisko* v. *Fitzpatrick Brothers,* 232 Mich. 593, 595, where many of our cases are cited in its support.

Let us apply the tests therein referred to to the facts as above stated. The defendant company's contract with Russell, not in writing, obligated him to travel from place to place in the upper peninsula to call on dealers, collect accounts due the company, ''to establish new dealers wherever possible, and promote the sale'' of that company's products. He was occasionally requested to ''make a special call'' on a dealer ''who was behind on his accounts,'' and also to make a call when given ''a lead on some customer.'' At times, when making such calls, he was accompanied by an official of the company. The service rendered was a personal one; the receiving of orders for the company's products, and the collection of its accounts, for which he was paid a stated weekly compensation. There was no agreement to pay a commission on the sale of a particular article. The contract of employment was for no definite term, and might have been terminated by either party at will. He was not in any sense engaged in an independent business, with profits or losses dependent on his conduct of it. Were it not for the fact that he used his own car, and that the expense of its operation and maintenance, as well as his personal expenses when traveling about, was included in the weekly compensation paid him, the situation would be no different from that of the ordinary salesman traveling about and selling the goods of his employer.

It has been many times said that the right to control, not only as to the result to be accomplished, but also as to the means to be used, is decisive of the relation existing. This rule may well be applied where a specified piece of work is to be done, as was the case in *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385 (Ann. Cas. 1918C, 664), and in *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89. But an official of the company could not well be present and exercise control over Russell in the performance of his work. Special directions were at times given him, and, if the service rendered was not at any time satisfactory, the employment could have been terminated. When he was leaving Marquette for Houghton on the day in question, had Mr. White, by wire or telephone, directed him to go to some other place in his territory to interview a prospective customer or to enforce collection of an account in a particular manner, it would have been his duty, under the terms of his employment, to have done so and to explicitly follow the instructions given him. Actual interference with the control need not be shown if the right to exercise it exists.

Liability of the company rests upon the fact that Russell was at that time its servant or agent, and that he was using the car in the performance of his duties as such. It is immaterial, so far as the rights of third persons are concerned, to whom the car belonged. Had Russell hired a car at Marquette with which to make the trip to Houghton, instead of using his own, there would have been no different relationship between him and his employer, and no change in the duty imposed on him to drive it with due care, nor in the liability of the defendant company in case he failed to do so and injury to a third party resulted therefrom.

Counsel for the defendant company relies on our holding in *Gall* v. *Detroit Journal Co.*, 191 Mich. 405 (19 A. L. R. 1164); *Hanisko* v. *Fitzpatrick Brothers, supra,* and *Kimberg* v. *Murray,* 233 Mich. 543, while plaintiff's counsel cites *Dennis* v. *Sinclair Lumber & Fuel Co., supra,* and the cases therein referred to. Attention is also called to the decisions in other States, but, as was said in the *Dennis Case,* many of them are "not in line with our decisions." There is little dispute about the rule to be applied for determination of the question, but the facts are never the same, and the result reached is, of course, dependent upon them. A review of the cases in which this question was involved will be found in 17 A. L. R. 622; 20 A. L. R. 678; 29 A. L. R. 460; 54 A. L. R. 623; and 60 A. L. R. 1159.

On this record we hold that the relation of master and servant existed at the time of the accident.

2. Assuming, as we have held, that the relation of master and servant existed, and that Russell was proceeding from Marquette to Houghton on the business of his master, and was using his own car with its implied consent, it follows that the defendant company would be liable for any damages to a third person occasioned by his negligent operation of the car. *Lewis* v. *National Cash Register Co.,* 84 N. J. Law, 598 (87 Atl. 345). But, while apparently conceding its liability had Russell been driving the car, and the relation of master and servant established, the defendant company insists that, as the evidence discloses a want of express or implied consent on its part for him to permit another person to drive it, his act in doing so was outside the scope of his employment and no liability attached to the defendant for negligence in its operation while being so driven.

Ray Zerbel was at that time the manager and purchasing agent of the Automatic Utilities Company at Marquette. This company had a franchise for handling the radio manufactured by the Detroit Electric Company, which Russell was selling. It also had a store at Houghton. On being asked how he happened to be with Russell at the time of the accident, Zerbel answered:

"Why, I made occasional trips to the Houghton office, on an average every week or 10 days, I tried to get up there, and he having come into Marquette that day, he told me he was going to the copper country; I told him it was necessary for me to go up there some time during the week, and probably it would be a good idea to go along with him for the sake of company."

He was then asked how he happened to be driving, and answered:

"No more than the courtesy usually offered, to divide the driving. He had come from Escanaba to Marquette, and I volunteered to do my share of the driving. It is customary when fellows travel together."

The car in question, while owned by Russell, was an instrumentality used by him in the prosecution of the business of his employer and in the accomplishment of objects within the line of his duty as an employee. While the company was most interested in the sales made and collections had, it cannot well be said that its officials had no interest in the manner in which he performed the service, as sales in the future might be considerably affected thereby. In the use of this instrumentality, at the request of Zerbel, a customer of the company, and one whose good will he had implied authority to cultivate (*Kerns* v. *Lewis,* 249 Mich. 27, 30), he

permitted him to drive it for a time. Russell sat beside him, and by entrusting the charge of the steering wheel to Zerbel he did not relieve himself, nor do we find that he relieved his employer, from the duty of seeing to it that the car was carefully driven.

Many of the decisions cite with approval the early English case of *Booth* v. *Mister,* 7 Car. & P. 66 (173 Eng. Repr. 30). In that case a servant, while driving a cart on his master's business, entrusted the reins to a friend riding with him, who drove carelessly, causing an accident. The court said:

"As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

In an annotation appearing in 44 A. L. R. at page 1385, the writer says:

"The general rule that the employer is not liable for the act of one employed by his servant without authority to discharge a duty intrusted to the servant is subject, according to some cases at least, to the qualification that when such acts are done in the presence of the servant, the actor is considered as the *alter ego* of the servant, his acts are the acts of the servant, and therefore the master is liable for such acts; that is, that where the servant to whom is intrusted the operation of the automobile permits, in his presence, another to operate the same, the master is liable in case of accident while the automobile is being operated by the stranger, on the theory that a person who is permitted by the servant to operate the automobile is an instrument in the hands of the servant."

A number of cases are cited in its support.

Counsel for the defendant company calls our attention to this statement in his brief, but insists

that it is only applicable where the master is the owner of the car and places it in the hands of the servant to operate. He also calls attention to a later annotation (54 A. L. R. 852) in which cases dissenting from the rule as stated are referred to.

In *Geiss* v. *Twin City Taxicab Co.*, 120 Minn. 368 (139 N. W. 611, 45 L. R. A. [N. S.] 382), it was held (syllabus):

"Where a servant, without authority from the master, permits a stranger to assist him in his work for the master, and such stranger, in the presence of the servant and with his consent, negligently does such work, the master is liable for such negligence."

We think the more satisfactory rule is to hold that the person permitted by the servant to operate the car in his presence is but an instrument employed by him, and that his acts are, in legal effect, the acts of the servant himself.

We refrain from further citations of authorities. They will be found collected, annotated, and commented upon in 20 A. L. R. 194, 44 A. L. R. 1382, and 54 A. L. R. 852.

Counsel for the defendant Russell, at the close of their brief, say:

"It is, therefore, respectfully submitted that if this judgment is to be reversed as to the Detroit Electric Company that it must be reversed *in toto*. If it is to be affirmed as to the other appellant, our claims of error may be deemed waived."

The judgment as to both defendants is therefore affirmed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.