Leonard Hempstead, Appellee, v. Toledo Scale
Company, Appellant.

Gen. No. 36,232.

Opinion
filed April 11, 1933.

Cassels, Potter & Bentley, for appellant; Ralph F. Potter, Leslie H. Vogel and E. Douglas Schwantes, of counsel.

Leopold Saltiel and Richard D. Brown, for appellee.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

Leonard Hempstead sued Toledo Scale Company, a corporation, and Antonio Camboni in case. At the commencement of the trial plaintiff dismissed his action against Camboni. A jury returned a verdict finding the remaining defendant guilty and assessing plaintiff's damages at the sum of $1,300, and Toledo Scale Company has appealed from the judgment entered upon the verdict.

Plaintiff sued to recover damages for injuries sustained when he was struck by an automobile operated by Camboni. Toledo Scale Company (hereinafter called appellant) raises but one contention, viz: "The evidence not only failed to show that Camboni was an agent or servant of the defendant, but, on the contrary, the proof clearly establishes that Camboni was an independent contractor for which reason the court erred in refusing to allow the motions and give the instructions requested at the close of the plaintiff's case and renewed at the close of all the evidence."

The only testimony that bears upon the relationship that existed between appellant and Camboni is that of the latter, who was called by plaintiff as a witness. From his evidence the following facts appear: About three years prior to the time of the accident appellant "engaged" him to sell scales for it in the following territory: From the Chicago river on the east to the Cook county line on the west, and from 12th street on the south to Chicago avenue on the north. He was

given the exclusive right to sell appellant's scales in that territory. He received no salary and no allowance for expenses of any kind, and his only compensation was commissions on sales made by him. At the time he was engaged he owned an automobile, but no reference was then made to that fact, nor was there ever any agreement that he should operate it in the performance of his work; nor did appellant ever control or direct, in any way, the operation of the car; nor did it ever pay him any expense money for the upkeep or maintenance of it, but it knew that he used his automobile in his work. No one connected with appellant ever gave him any directions in reference to the manner in which he was to do his work. He located his own prospects and followed his own method of making sales, or, as he expressed it, he "acted in accordance with his own ideas." He had no regular hours for work and the time he devoted to it was entirely within his control. He testified that some time after he commenced selling scales several of the older salesmen suggested to the younger salesmen that it would be a good idea for all the salesmen to have morning meetings at which they might discuss "things for advancing the interests of the salesmen of the Toledo Scale Company in Chicago"; that the salesmen voted to have such meetings but that attendance was not compulsory; that he sometimes attended the meetings; that sometimes he went to the office of appellant before starting his work, and sometimes he "started to work directly from his home." He did not report to anyone at the office, but "once a week, maybe twice, and maybe once a month," he talked over the telephone with the switchboard operator and asked her if she had any messages for him; that sometimes "the office" gave him the names of people "they thought were in the market for a Toledo scale" in his territory. He further testified that a former super-

visor of defendant employed him. "Q. (Mr. Brown, attorney for plaintiff): Who was your superior or immediate supervisor? What is his title? The Witness: A Manager of the Chicago office. Q. And what was the arrangement under which you worked? A. On a commission basis." He further testified that sometimes, when he felt so inclined, "for the accommodation of the customers," he delivered scales to them or took scales back from them to appellant's office; that he was not directed by appellant to do this. It is conceded that at the time of the accident he was using his automobile and was on his way to visit a prospective customer.

In *Ferguson & Lange Co. v. Industrial Com.,* 346 Ill. 632, 635–637, the court said:

"It is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee or as an independent contractor. Ordinarily no single feature of the relation is determinative but all must be considered together. (*Bristol & Gale Co. v. Industrial Com.,* 292 Ill. 16.) An independent contractor has been defined as one who renders service in the course of an occupation and represents the will of the person for whom the work is done only with respect to the result and not the means by which that result is accomplished. (*Hartley v. Red Ball Transit Co.,* 344 Ill. 534; *Lutheran Hospital v. Industrial Com.,* 342 id. 325; *Besse v. Industrial Com.,* 336 id. 283; *Bristol & Gale Co. v. Industrial Com., supra.*) It also has been said that if the person for whom the service is rendered retains the right to control the details of the work and the method or manner of its performance, the relation of employer and employee exists. (*Hartley v. Red Ball Transit Co., supra; Nelson Bros. & Co. v. Industrial Com.,* 330 Ill. 27.) The right to control the manner of doing the work is an important if not the principal

consideration which determines whether the worker is an employee or an independent contractor. *Lutheran Hospital v. Industrial Com., supra; Besse v. Industrial Com., supra; Nelson Bros. & Co. v. Industrial Com., supra; Best Manfg. Co. v. Peoria Creamery Co.,* 307 Ill. 238; *Bristol & Gale Co. v. Industrial Com., supra; Meredosia Levee and Drainage District v. Industrial Com.,* 285 Ill. 68.

''The defendant in error issued cards showing that his business was hauling cinders; he owned the horses and wagon which he used in conducting the business; he defrayed the cost and expense of maintaining his horses and of keeping his equipment in repair; he sold the horses he bought from Kammerlander and purchased other horses as well as a new wagon; he employed assistants whenever necessary; he was free to do hauling for others and when ill he substituted another person in his stead. In his arrangement with the foundry company no hours were fixed for the rendition of his service; he began and quit work when he desired; he delivered the waste material to places of his own selection and when he sold a load of cinders he was neither obliged to report the sale nor to account to the plaintiff in error for it. The foundry company did not concern itself with the details of the work in which the defendant in error was engaged; the time and manner of performance were left to the latter's discretion and his responsibility to the plaintiff in error was for the result which it sought to obtain. The fact that occasionally, when dirt and cinders had accumulated in the yard of the foundry to a considerable extent, the defendant in error was requested to remove the waste materials from a particular part of the yard before attention was given to another part is inconsequential. Such requests were made to avoid interruption of the foundry company's business; they did not affect either the manner of performance or the dis-

position of the materials and they constituted no such control as would warrant a finding that the relation of master and servant existed. (*Meredosia Levee and Drainage District v. Industrial Com., supra; Gallagher's case,* 240 Mass. 455.) When all the facts and circumstances are considered, it is manifest that the defendant in error performed the service of hauling free from control or supervision by the plaintiff in error. He was an independent contractor at the time he was injured and is therefore excluded from the provisions of the Workmen's Compensation act. *Nelson Bros. & Co. v. Industrial Com., supra; LaMay v. Industrial Com.,* 292 Ill. 76; *Meredosia Levee and Drainage District v. Industrial Com., supra.''*

While our Supreme Court has often stated the general principles that should be applied in determining whether a person is a servant or an independent contractor, so far as we are aware, it has not been called upon to pass upon a case involving facts similar to those in the instant case, but in the late case of *Meece v. Holland Furnace Co.,* 269 Ill. App. 164, the Appellate Court for the third district held that a salesman was not the servant, but a subcontractor, of defendant company, which was sued for injuries sustained by plaintiff when struck by the salesman's automobile, when he was paid for his services on a commission basis, paying his own expenses, and defendant had no control whatever over him in the prosecution of his work, nor the method of locomotion which he might select, and was only interested in the results of his work. In *Pyyny v. Loose-Wiles Biscuit Co.,* 253 Mass. 574, it appeared that one Bancroft, a traveling salesman for defendant, '' 'had no regular hours to work; his time is his own and the trade that he can see any time at all during the twenty-four hours a day, he tries to see them'; that he owned the automobile that was in the collision and used it in his business as travel-

ing salesman; that his sole business was to sell biscuits for the defendant; that he was paid a salary and commission and the expense of operating the car; that he always carried a sample case and advertisements in the back of his Ford coupe car and they were in the car at the time of the accident.'' The court held that Bancroft was his own master in respect to the management and control of the automobile that struck and injured the plaintiff, and judgment was entered for the defendant. In *Barton v. Studebaker Corp. of America,* 46 Cal. App. 707, 189 Pac. 1025, the court held that the driver of an automobile, by whose negligent driving of his car plaintiff was injured, was not a servant of the defendant, but an independent contractor, as it appeared that he was a salesman on commission; that the defendant had no authoritative control over him in respect to the manner in which the details of the work were to be performed, except the right to require him to conform to its instructions in his representations as to the cars, that is, no complete control, and that it was immaterial that he used the rooms of the company's plant for showing machines to prospective customers, or that his authority to act for it was evidenced by its card, on which his name was printed. In *Aldrich v. Tyler Grocery Co.,* 206 Ala. 138, 140, the court states:

''Shook (whose car ran into the plaintiff) was the grocery company's 'city salesman.' He alone owned and maintained the automobile causing the injury. He was compensated on a commission basis. He was paid a percentage on orders taken and accepted. He received payment of bills due the grocery company and delivered such payments to it. The grocery company was only concerned in the result of his efforts as salesman. It did not control when, how, or where he secured these orders, except he was not to work another salesman's trade in the territory he (Shook) was en-

titled to work. The method, means, and occasions of his calls upon the trade was left entirely to him, uncontrolled by the grocery company. The facts that he was lame, that the company knew this fact, that the company knew when he first was engaged that he would and did afterwards visit the trade in a car of his own, maintained alone by him, and that on this occasion Page, his associate or successor as city salesman, was in the car when the injury occurred, did not operate, singly or otherwise, to change Shook's relation from that of an independent contractor to a servant to the grocery company as master in the operation of Shook's automobile on this occasion."

In *James v. Tobin-Sutton Co.*, 182 Wis. 36, 37, 38, the court states:

"We have reached the conclusion that upon the undisputed evidence the law declares him (Sovic, the driver of the automobile) to have been an independent contractor at the time of the collision, for whose acts the Tobin-Sutton Company was not liable. The evidence shows that the Tobin-Sutton Company was a retail seller of Ford automobiles and accessories and employed seven or eight salesmen, one of whom was Sovic, who sold automobiles on a commission basis. They received no salary, but a limited checking account was advanced them which was absorbed by commissions when earned. All salesmen were required to report to the Tobin-Sutton office at 8 o'clock each morning, when the previous day's work was discussed and suggestions or criticisms were offered and prospect cards were handed out to them. After they reported each morning they could go where they pleased and sell cars anywhere within Milwaukee county. The Tobin-Sutton Company exercised no direct control over them. Each salesman was required to own and operate a Ford car for demonstration purposes. He had to pay for the car and its maintenance, but if he

paid cash he got a slight discount for gas, oil, and repairs if purchased or made by the Tobin-Sutton Company. They were not required to buy gas or oil from or have repairs made by the Tobin-Sutton Company. After reporting at 8 o'clock each salesman controlled his day's work in all respects, both as to length of time he would work, where he would go, and the manner of effecting sales. The salesman could come back to the Tobin-Sutton office at any time, and they often came back in the evening but not for orders or suggestions, but for their own purposes, convenience, or pleasure.'' Plaintiff, in support of his contention that Camboni was a servant or agent of appellant and not an independent contractor, cites *Marchand v. Russell,* 257 Mich. 96; *Brown v. Leppo,* 194 Ill. App. 243, and *Hoelker v. American Press,* 317 Mo. 64, 296 S. W. 1008. In *Marchand v. Russell, supra,* the alleged independent contractor was controlled by the defendant as to the details of his work and the manner of doing the same; he was paid $100 a week, which included his expenses, and if his sales exceeded a certain amount he received a commission; he was obligated to travel from place to place, to call on dealers, collect accounts due the company, to establish new dealers wherever possible, and to promote the sale of the company's products. Sometimes an official of the company accompanied him on his calls. *Brown v. Leppo, supra,* is entirely dissimilar from the instant case upon the facts. In *Hoelker v. American Press, supra,* the court held that under the facts the inference could reasonably be drawn ''that right of control of the means was assumed and exercised by the defendant,'' and that under all the circumstances the question as to whether or not the operator of the motorcycle was an independent contractor or an employee of the defendant was a question for the jury. From a reading of the evidence in that case it is plain that the plaintiff made out a prima

facie showing that the defendant retained the right to control the details of the work and the method of its performance.

Plaintiff contends that the evidence shows "that the defendant could at any time discharge their salesman, Camboni, or change his territory and hire another man in his place. This, if nothing else, clearly determines the question whether or not the relation of master and servant or principal and agent existed between the defendant and Camboni." In support of this contention plaintiff cites *Densby v. Bartlett*, 318 Ill. 616. The question presented in that case was whether the driver of the car was an employee of one defendant or the other, and the court held that a party who hires, for the use of his customers in the real estate business, an automobile and driver from one who is engaged in the business of loaning cars and drivers for hire, does not become responsible for the negligence of the driver as his servant where he does not have the right to discharge the driver and does not hold himself out as owner of the car and master of the driver; and that the fact that the hirer has the right to direct the driver when and where to go, whom to haul, and the route of travel, does not place the driver under the control of the hirer in the relation of master and servant. In its opinion the court said (p. 628):

"The driver, while performing a special service for appellant was performing work of his employer, Saracino, within the scope of his employment, viz., driving cars for persons who hired them from his employer. . . . In this case appellant was not authorized to discharge a reckless driver and replace him with another driver. At most he could dismiss the car and driver."

The court further stated the general rule that the relation of master and servant does not exist unless it includes the right to discharge. In the instant case the

testimony of Camboni fails to show whether the arrangement between him and appellant was for a definite or an indefinite period of time, nor does it affirmatively show any right in appellant to arbitrarily terminate the arrangement with Camboni. The ''arrangement'' between Camboni and appellant did not constitute a mere hiring of a servant as the term ''hiring'' is ordinarily used, but it was in the nature of a contract or agreement by which Camboni was given the right to sell, upon commission, the goods of appellant within a prescribed territory, his right in that regard being free from control or supervision by appellant; and even if we assume that appellant had the right to arbitrarily terminate the agreement, that fact could not, under the undisputed other facts of this case, determine the relationship between Camboni and appellant to be that of employee and employer, as plaintiff contends. As stated in *James v. Tobin-Sutton Co., supra:*

''The relation of the driver of an automobile who is selling goods on commission to the owner of the goods or to his employer is one peculiar to itself and has received construction in a number of cases. See note in 17 A. L. R. 621. In this class of cases, also, the final test is the degree of control which the employer has retained or exercised as to the manner in which the details of the work are to be done. If that is all left to the salesman he is an independent contractor. *Aldrich v. Tyler G. Co.,* 206 Ala. 138, 89 South. 289, 17 A. L. R. 617; *Barton v. Studebaker Corp.,* 46 Cal. App. 707, 189 Pac. 1025; *Premier Motor Mfg. Co. v. Tilford,* 61 Ind. App. 164, 111 N. E. 645.''

After giving the question involved in this appeal very careful attention, we have reached the conclusion that under the undisputed evidence in this case Camboni was not a servant of appellant, but an independent contractor, and that the court therefore erred in

refusing to give the instructions directing a verdict for appellant requested at the close of plaintiff's case and renewed at the close of all the evidence.

The judgment of the circuit court of Cook county must be reversed, and it is so ordered.

*Reversed.*

GRIDLEY and SULLIVAN, JJ., concur.